## L. C. Duncan *v.* Labouisse et als.

Article 671 of the Civil Code has not taken away from the owners of ground lots " in the cities, towns or suburbs of this State " the right of finishing the whole front of the house they may erect upon their lots, in such manner as their taste may dictate. The wall spoken of in that article is the side wall which supports equally the buildings erected on both sides of a line dividing the property of two individuals.

Parol evidence will not be received to establish a right in favor of a person to put up an iron pillar as part of a front wall to rest on the land of another. Any pact which constrains the owner's control or enjoyment of his property, is, to some extent, an alienation of his property, and when the subject matter is real estate must be evidenced in the mode required for the alienation of real estate.

APPEAL from the Second District Court of New Orleans, *Lea,* J.

*G. B. Duncan & C. Roselius,* for plaintiff and appellant :

It has been decided again and again that titles even may be affected by parol testimony, and in cases a thousand fold stronger than the one before the Court. For instance—where a purchaser is sued to compel a compliance with a sale, and avers that he is not bound by it, evidence is admissible to show that he *offered* his note at long dates. 10 La. 60. Again, one stands by and sees his property sold *as belonging* to another, will not be permitted *to set up his title* in opposition to a *bona fide* purchaser. Silence is as binding and expressive as a positive consent. *Qui tacet consentire videtur.* 3 R. 331. 5th R. 352—367— 518. 11th R. 365. 1st A. 288. 5th A. 67—108—411. 2d A. 501.

*Durant & Horner* for *Jamison & McIntosh,* (the builders, who were also enjoined.)

The only question of law presented by this case, is, "Did the Judge in the lower Court correctly refuse to hear the testimony of witnesses to prove that the iron pillar which forms a part of the party-wall, was erected with the consent and at the instance of *J. P. Labouisse,* one of the defendants ? "

This question touches the realty (Louisiana Code, 455), and no parol proof can be admitted, because it involves the transfer, alienation, abandonment or divestiture of a real right in *Labouisse.*

A consent to the creation of such a servitude as this must be made in writing. Louisiana Code, 681. *Pierce* v. *Musson,* 17 Louisiana Reports, 396.

The abandonment of the possession or title of real estate must be in writing. *Hereford* v. *Police Jury of West Baton Rouge,* 4 Ann. 172.

The Louisiana Code, Article 671, does not apply to a party wall made of iron.

*Moïse & W. M. Randolph,* for defendant.

Buchanan, J. The plaintiff alleges that the defendant is obstructing him in the exercise of a legal right—that of erecting one half of the wall of his building upon the property of the defendant which is contiguous to his own—a right accorded to him by Art. 671 of the Code. The question which is submitted to our consideration is, whether the Court below was right in refusing to permit the plaintiffs to give parol evidence of an agreement on the part of the defendant that plaintiff should put up an iron pillar that would occupy nine inches of the front of defendant's property on the street, he himself having determined to build a house, with granite pillars on the front of the basement story.

We are of opinion that the Art. 671 has not taken away from the owners of ground lots "in the cities, towns or suburbs of this State " the right of finishing the whole front of the houses that they may erect upon their lots, in such manner as their taste may dictate. The wall spoken of in that article is the side

7

wall, which supports equally the buildings erected on both sides of a line dividing the property of two individuals. The name given to the wall in the French text of the Code, "*mur mitoyen*," expresses that idea clearly. *Toullier* thus defines "*mur mitoyen*": "Celui qui est placé sur les extrémités de deux héritages contigues, qui est assis moitié sur le terrain de l'un des propriétaires, et moitié sur le terrain de l'autre." The article 672 of our Code also confirms this interpretation, "If the neighbor be willing to contribute, &c. then this wall is a wall in common *between* the proprietors."

Indeed the very offer of proof of an agreement on the subject, concedes that the article of the Code, unassisted, would not suffice to establish the right claimed by plaintiff. There is no dispute about the other facts in the cause. And as to this fact of an agreement to erect iron columns in front of the property of defendant, it is not the proof, but the kind of proof (parol) that is objected to. Upon a mature consideration of the law and the facts, I consider, with the Judge below, that no proof should be admitted of such an agreement, but such proof as may legally establish the title to real estate. Any pact which restrains the owner's control or enjoyment of his property, is to some extent an alienation of his property; and when the subject matter is real estate, must be evidenced in the mode required for the alienation of real estate—by written proof. The Code Napoleon does not contain an article corresponding to our 671st article. But the article 661 of the French Code is identical with our 680th article: "Tout propriétaire joignant un mur," &c. That article gives an adjacent proprietor the right of forcing the owner of a wall contiguous to his line, to sell the half of such wall. Toullier, vol. 3d, page 113, paragraph 196, in commenting the article 661, says: "L'obligation imposée à tout voisin de vendre la mitoyenneté du mur contigu à un autre héritage, est contraire à la loi de la propriété, en ce qu'elle force un propriétaire à aliéner." The principal difference between the article 661 of the French Code (our 680th article) and the article 671 of our Code is, that the former imposes the obligation of alienation for a compensation; the latter that of alienation without any compensation. It may, therefore be viewed as still more contrary to the law of property than the other; and no good reason is perceived why agreements to extend such alienation beyond the letter of the Code, should be exempted from the formalities required for alienations of real estate generally.

SLIDELL, C. J., and CAMPBELL, J., concurring.

It is therefore adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

SLIDELL, C. J. I think the parol evidence was properly excluded, for the reasons given by the District Judge.

The claim for damages is very vaguely made; the particulars of damage are not stated. That subject does not appear to have been considered at the trial, and it seems unnecessary now to decide whether, in an action for damages, properly brought by *Duncan*, for indemnity for any injury sustained in consequence of *Labouisse's* breach of the alleged agreement, parol evidence of that agreement would be admissible.

The right to bring such action was reserved by the judgment below.

I think the judgment should be affirmed.

OGDEN, J. On the trial of this cause in the Court below, the plaintiff offered in evidence a plan of the buildings erected by him, on Carondelet street, as originally prepared for the use of the architect, and then offered by parol evi-

dence to show, that at the special instance and request of the defendant, *La-* <span>Duncan</span>
*bouisse,* who was the proprietor of the adjoining lot, the plan was changed and <span>Labouisse et al.</span>
the buildings erected according to another plan approved by *Labouisse,* by
which an iron column with three sides was erected at the projection of the
partition wall on the street, so as to show a front and a face equally on the lots
of both proprietors. The Court below rejected the evidence, on the ground
that the tendency of it was to affect the title to real estate, and that the law
requires such proof to be in writing. It is undoubtedly true that when written
proof is required by law, parol evidence cannot be admitted to supersede its
use, and the only question is whether the principle is applicable to the facts of
this case. The plaintiff, being the first to build on his lots, had a right by law
to rest one-half of his wall on his neighbor's lot, provided stones or bricks were
used as high as the first story, and provided the whole thickness of the wall,
not including the plastering, should not exceed eighteen inches. If the plain-
tiff had attempted to build the partition wall with other materials than stone
or brick, the defendant could have enjoined him from so doing. The iron col-
umn about which the parties are contending, rests equally on the respective
fronts of their lots, and whether it is to be considered as forming part of the
partition wall or not it is not material to consider. We agree with the Judge of
the Court below, that each proprietor has a right to the display of his whole
front according to his own taste and judgment, and if the defendant is compell-
ed to have an iron front instead of a granite front to his building which he
desires to be put up, it does affect the enjoyment of his right in real estate.
If the plaintiff was endeavoring to enforce the execution of an agreement to
that effect on the part of the defendant and to use one-half of the iron column
on his neighbor's lot, we would not consider parol evidence competent to estab-
lish such a right; but the agreement, if ever made, was executed; the column
has been erected; it is a construction made on the soil belonging to the defend-
ant. Art. 498 of the Code declares that all the constructions made on or within
the soil are supposed to be done by the owner. The defendant wishes to cut
away the half of this column resting on his own lot; the plaintiff contests his
right to do so on the ground that it will materially injure his building, and that
it was placed there by a special agreement with defendant, and for their joint
benefit. Considering that the presumption of the law is that this construction
found on the defendant's soil, was placed there by himself—that article 853 of
the Code declares, opposition may be made to every species of new work from
which injury is apprehended, whether the work be in the city or in the country,
in places built up or not built up; and considering further that the Civil Code,
Art. 1810 and 1811 declares that actions without words, and even silence and
inaction, are, under certain circumstances, presumptive evidence of a contract;
we consider that the defendant would be in equity estopped from the right he
claims of substituting a granite column in place of the iron one now resting
partly on his lot, if by so doing the plaintiff's building would be materially in-
jured thereby, and it can be established that the column was placed as it now
is, under circumstances which would imply a consent on the part of the defendant.
The principles of equitable estoppel laid down in the case of *McMasters* v. *the
Commissioners of the Atchafalaya Railroad Co.,* are in every respect applicable to
the present case. All the facts and circumstances tending to establish the con-
sent of *Labouisse* to placing the column as it now stands are susceptible of
proof by parol evidence without violating any of the principles which seem to

DUNCAN
v.
LABOUISSE ET AL.

have governed the decision of the Court below. If the column can be so changed as to cause no detriment to the plaintiff, the defendant would have the right, even if his consent is proved, to make the change; but he would be bound to furnish security to the plaintiff to pay any damages which might be occasioned by the change. See Arts. 863 and 864 of the Civil Code.

Justice VOORHIES concurs in this opinion.

*Benjamin, Micou & Finney,* for a re-hearing.

1. It is submitted to the Court that the servitude in question is created by law; results from the ownership, of which the title of the party is the evidence. There can be nothing taken in this case as establishing this servitude, in any other mode than by the the title. All other evidence would be an absurdity.

The title then establishing the servitude, we have to deal with the wall or the work placed upon the land affected by the servitude.

This servitude is attached to the lateral lines of the plaintiff's lot—that is, to the part in contact with the lands of his adjoining neighbors. They exist in favor of contiguous estates and of course in the whole extent of the line of contact.

The wall in common is an *entirety—indivisible*—or thing existing in its relation to the two contiguous estates: in that light alone it is to be considered in respect to the evidence offered. The rights at either extremity are dependent on that relation—not that there may not be different rights created by contract making it divisible; but so far as the action of the Court is sought, it is entire. The front-end is a part of the wall and so is the rear. Did the defendant consent to the materials of which it should be constructed? whether of mud, of stone, brick or iron, it is immaterial to the present inquiry and dependant on the evidence as to usage, &c. which are matters *dehors* the law question.

The Article 671 treats of servitudes and the relations of estates to each other; it, of course, confines itself to the line of contact of the contiguous estates, but thereby regulates the front as far as it purports to affect it. Thus the servitude is created throughout *the whole extent of the lateral line*—where does this line terminate? on its contact with the front or street line. A line is length, without breadth, and consequently the servitude continues up to the street. Beyond this it is not necessary to go, because it is not contended that any rights beyond the line of the public way are in controversy. But this common wall exists up to the street line, each proprietor having a right to use his half as he chooses. Can the servitude be held to cease at *any point, short of the front line?* at the line of a front wall, or any other work of the owner? The code negatives such an idea. The *inner* line of a front wall or work, is not the line at which the servitude terminates.

2. By Art. 672 the owner of the subjected estate can make the wall common at any time by paying one half the *cost* of the wall and he is entitled to notice from the other party when he is about constructing the wall, so that he may contribute or not to its expense; if notice be given the wall can only be used on the payment of the original cost and not its value at the time it is made use of. *Grailhe* v. *Hown,* 1 Annual Rep. 141.

How is this notice to be given—in writing or verbally? can or not this notice be waived? By acquiescence, by acts or by the execution of the work? By standing by and seeing the money and material employed of which he is to have the benefit?

On the question of estoppel, it is sufficient to refer to the opinion of Mr. Justice *Ogden* and the case of the *Navigation Company* and *Hennen,* recently decided by this Hon. Court. There are numerous recent cases in the Reports in which this doctrine is maintained and none in which it has been drawn in question. A party may, by his own voluntary acts place himself in a situation as to some matter of fact, by reason of which he is estopped from denying it, and to which the law, from policy, holds him, in order to prevent the unavoidable mischief resulting from uncertainty, confusion and want of confidence in the intercourse of men, if they were permitted to deny what they have asserted and induced others to act upon.

But suppose the notice must be in writing or written evidence is required of the assent of the defendant to this mode of constructing the wall or rather the front end of it, was not the evidence offered and rejected, written?

If the plaintiff had covered a quire of paper with discriptions of what he intended to do, could it have as well apprized the defendant of the proposed work as the plans and drafts which he furnished him? Let your honors cast your eyes upon the plans, and then judge whether any words could convey the idea as well as the pictures there represented? are not these plans written, in every sense of the term? Is there no writing,—no words written on the plans? Let them speak for themselves. No. 1 represents written on it—

> "Flank Elevation,    Front Elevation,
> "Union Street,        Carondelet Street,
> "Stores for G. B. Duncan, Esq.,
> "Gallier, Turpin & Co., Arch. and Builders, 1852."

No.2

No.3

Sundry figures showing height of stories.

> "First story—Second Story—Third Story.
>                    Verandah.
> "Stores of G. B. Duncan, Esq.
> "Gallier, Turpin & Co., Arch. & Builders, 1852."

Galleries.
Galleries.
Galleries,

> "Elevation of a proposed range of
> "Seven Stores on Carondelet street,
> "On lots belonging to

| "L. C. Duncan, | Labouisse | Fairex | Mrs. Slocomb, |
| "        Feet | Feet | Feet | Feet In., L. |
| 50 | 25 | 50 | 50    8    6 |

If these plans and writings were delivered to the defendant, and acted upon by both parties, and the work done accordingly, the assent was given and is proved—technically proved—if the evidence is admissible. Do they not constitute a species of title of the wall and its front—binding upon the plaintiff of which the defendant had the benefit? Suppose the plaintiff wanted to change it, would not defendant hold him to it, and insist on the production of the plans in Court by plaintiff or prove their contents by copies of the testimony of the draughtsmen?

Suppose that the plaintiff had erected the entire common wall, from the rear line to the front line, of *iron*, instead of brick; and had done so even without the knowledge or consent or acquiescence of the defendant, would it even then be competent for the defendant to remove, to cut away or mutilate the whole or any part of that entire wall? *Omne majus in se minus continet.* If he could not remove the whole line of the wall, can he remove a part only, and such part or portion of the whole as his caprice may dictate? The conduct, rights and duties of the defendant in such a case, and it is the very case at bar, are defined, regulated and controlled, it is respectfully submitted, by the Article 681 of the Civil Code.

The defendant wholly disregarded the provisions of this article, and proceeded *ex suo proprio motu*, to mutilate and to remove a part of the common wall and without any notice to his neighbor, or any precautionary measures, "ascertained by persons skilled in building." Hence the absolute necessity of this injunction that plaintiff may be protected from the injurious effects and illegal conduct of his neighbor.

The ruling of the District Court assumes a degree of refinement on questions of evidence, relative to real estate, at once impracticable and inconsistent with all the relations of men in civil society. All agreements of men, touching their property, are made *on* the earth, and it would be simply absurd to say that such agreements could not in any form, be controlled by parol testimony, because it touched the realty. The District Judge assumes, at page 27 of the Transcript, that the erection of a common wall "is a form of alienation." No such assumption is authorized by any text or fair interpretation of the law. Suppose the entire destruction of edifices, the walls of which had been made common, either by agreement or simple operation of law—would it be contend-

ed, could it be maintained, that either of the adjoining proprietors had alienated his land, and had lost forever all proprietary interest? In the present case all ownership in defendant's land, was, as is set forth in the bills of exception, disclaimed by the plaintiff. In all cases and under all circumstances, the adjoining proprietor never loses his ownership because his neighbor has exercised his own rights. There is no direct, or absolute, or even temporary or quasi alienation, nor is any alienation- contemplated by the law. All that the law authorizes is a right, in certain specified cases, *to use.* This is a *personal* right, to be exercised in cases specified, but is not a real right susceptible of alienation *per se,* but o1ly by alienation of the entire Estate.

Application for re-hearing refused.